THE FIRST NAT. BANK OF AFTON v. THOMPSON ET AL.

1. **Homestead:** PURCHASE WITH PROCEEDS OF PRIOR HOMESTEAD: BUR-
DEN OF PROOF. The vendee of a homestead who claims that prior
judgments against his vendor are not liens on the property, on the
ground that his vendor purchased it with the proceeds of a prior home-
stead, has the burden to establish that claim, and in this case *held* that
the evidence was not sufficient.

2. **Vendor and Vendee:** PURCHASE SUBJECT TO JUDGMENT: CLAIM
FOR IMPROVEMENTS AND DISCHARGE OF OTHER LIENS. One who pur-
chases real estate charged with notice of judgments against his vendor,
which are liens on the property, cannot, as against the judgment cred-
itors, claim a superior lien on account of improvements made upon the
property, and of money paid in discharge of other liens thereon, even
though they were prior to the judgments.

72   417
124  592

*Appeal from Creston Superior Court.*

THURSDAY, OCTOBER 6.

ACTION in equity to subject real estate to the payment of
certain judgments, which is resisted because of the claimed
homestead character of the real estate. The relief was
granted, and the defendants appeal.

*John A. Paterson* and *J. H. Copenheffer*, for appellants.

*McDill & Sullivan*, for appellee.

SEEVERS, J.— In March, 1879, Joseph Thompson obtained
title to the real estate in controversy. In June, 1879, the
plaintiff recovered two judgments against him
on certain indebtedness that was created as
early as 1876. The judgments were therefore
liens on the real estate, unless, because of the
facts which we shall proceed to state, no lien was created.
For some years prior to 1876, Joseph Thompson owned a
homestead, and the defendants claim that he sold such home-
stead, and with the money thus obtained he purchased the
premises in controversy for a homestead, and used and occu-

1. HOME-
STEAD: pur-
chase with
proceeds of
prior home-
stead : bur-
den of proof.

pied the same as such from the time he made the purchase, in 1879, and that he afterwards sold and conveyed the premises in controversy to his co-defendant, Granville Thompson.

It will be conceded that, if the premises in controversy ever became the homestead of Joseph Thompson, then said property cannot, in the hands of Granville Thompson, be subjected to the payment thereof, for the reason that Joseph Thompson had a right to change his homestead. The burden to establish that the premises are not subject to the lien of the judgment is upon the defendants. The material question is at what time the prior homestead was sold, and whether the proceeds obtained therefor were used in the purchase of the premises in controversy.

There are four witnesses who testify in relation to the sale of the prior homestead, and the time it took place. Such sale was evidenced by a writing, but it was not introduced in evidence, and it may be assumed to have been lost. Such witnesses were Joseph Thompson, Granville Thompson, and two brothers of the latter. Three of them testify that such sale took place in 1878 or 1879, and they testify that, with the proceeds of such sale, Joseph Thompson purchased the premises in controversy. The old homestead was incumbered with a mortgage; and Andrew Thompson testifies that his brother " bought father's equity in the old home place; there was about a year for redemption; " and Joseph Thompson testifies that an action had been commenced to foreclose, or the mortgage had been foreclosed, at the time he sold the old home to Granville. The action to foreclose such mortgage was not commenced until October, 1878. The notice was not served on Joseph Thompson until January, 1880, and judgment of foreclosure was not obtained until March, and the sale of the premises took place in May thereafter. If the sale of the old homestead did not take place until after the action to foreclose the mortgage was commenced, then it must be true that the proceeds received for such sale were not used in the purchase of the premises in controversy, for

the reason that the old homestead was not sold until the claimed purchase of the new homestead was made. Now, as the burden was on the defendants, and it is evident that their evidence cannot be all true, we think, from the circumstances, that the greater probability is that the sale of the old homestead was not made until nearly or quite a year after the premises in controversy had been purchased; and we so find from the evidence, as did the court below. It therefore follows that the judgments became a lien on the premises in controversy at the time they were rendered, and such lien continues to exist thereon in the hands of said Granville. At the time Joseph Thompson purchased the premises in

2. VENDOR and vendee: purchase subject to judgment: claim for improvements and discharge of other liens. controversy, he executed a mortgage thereon to secure the payment of a part of the purchase-money, and there was a prior lien on said premises executed by Joseph Thompson's grantor; and Granville Thompson claims that he assumed and agreed to pay said mortgages as a part of the purchase-money; that in fact he had paid the same, or a greater portion thereof; and that he has expended large sums of money in improving said premises; and he asks that it be adjudged that he have a lein on said premises superior to the lien of the plaintiff. We think he is not entitled thereto, for the reason that he was bound to know, when he purchased said premises, that the judgments of the plaintiff were valid liens thereon, and he stands in the place of Joseph Thompson; and it is clear that, if he had paid the mortgage, he would not have been entitled to a lien superior to the plaintiff's. Whatever improvements Granville made he made with full knowledge, and at his peril, and he is not entitled to a lien therefor, as against the plaintiff.

AFFIRMED.