CITIZENS STATE BANK OF TULSA

v.

PITTSBURG COUNTY BROADCASTING CO. et al.

No. 35905.

Supreme Court of Oklahoma.

Feb. 9, 1954.

Rehearing Denied June 15, 1954.

Joe N. Shidler, Gordon L. Patten, Wm. J. Threadgill, Tulsa, for plaintiff in error.

Smith & Rogers, Tulsa, for defendants in error.

O'NEAL, Justice.

This case involves a question of priorities of certain loans secured by chattel mortgages executed by Harold McDonald. Harold McDonald was the owner of a Nash automobile. He obtained a loan from the First National Bank of McAlester, Oklahoma, secured by a chattel mortgage upon the car. Next, McDonald obtained a loan from the Pittsburg County Broadcasting Company secured by a chattel mortgage upon the car. Thereafter, McDonald obtained a loan from the Guaranty Investment Company of Pocahontas, Arkansas, which was secured by a chattel mortgage upon the car. Lastly, McDonald secured a loan which was obtained from Charles Fassino of McAlester, Oklahoma, secured by a chattel mortgage upon the car. All of the foregoing mortgages were filed for record in the counties where the loans were made.

After consummating the foregoing transactions, McDonald moved to Tulsa, Oklahoma and opened a personal account in the Citizens State Bank of Tulsa.

In our discussion of the record we will refer to the defendant below as the Citizens Bank; to the plaintiff below as the Broadcasting Company, and to the First National Bank of McAlester, as the McAlester Bank.

The record discloses that in July, 1951, McDonald made an application for a loan from the Citizens Bank. He requested a loan in the sum of $1130 to be secured by a chattel mortgage on the same Nash automobile then under mortgages as heretofore indicated. This application discloses that McDonald was indebted to the McAlester Bank in the sum of $1018. An officer of the Citizens Bank testified that he made an investigation of McDonald's credit rating and also wrote a letter to the McAlester Bank, which advised him that McDonald was indebted to the McAlester Bank in the sum of $1018.35, which was then secured by a chattel mortgage on the Nash car.

Approximately a week later, McDonald requested the Citizens Bank to "just lift the mortgage up to Tulsa so it would be more convenient for him to make the payments."

Several days later the Citizens State Bank made the loan to McDonald in the sum of $1130, secured by a chattel mortgage on the Nash car, which mortgage was filed for record on July 30, 1951, in the office of the County Clerk of Tulsa County, Oklahoma. The Citizens Bank remitted to the McAlester Bank the sum of $1018.35. Thereafter, and on August 6, 1951, the McAlester Bank mailed to the Citizens Bank the McDonald note and a chattel mortgage release. The mortgage release was not filed of record.

On October 15, 1951, at the suggestion of its counsel the Citizens Bank requested by letter that the McAlester Bank give it an assignment of the chattel mortgage previously held by it. This request was refused.

The evidence sustains Citizen's contention that it did not have knowledge of the existence of the Broadcasting Company, the Guaranty Investment Company of Pocahontas, Arkansas, nor the Charles Fassino chattel mortgages on the car at the time it made its loan to McDonald; but that it was informed of such facts some time thereafter.

Shortly after receiving the loan from the Citizens Bank, McDonald moved to St. Louis. The Citizens Bank then repossessed the car which was placed in storage but subsequently sold under a receivership proceeding and the proceeds of the sale impounded to wait the final action of this court.

The sole issue presented here is a determination of priorities of the four mortgage liens upon the fund realized from the sale of the car.

The Citizens Bank contention is that it was subrogated to the rights of the McAlester Bank on its mortgage, and that therefore the court erred in not holding that

its lien on the car was prior and superior to the liens of other named parties to the action. Upon this theory the Citizens Bank asserts that it is entitled to the possession of the car for the purpose of foreclosing its mortgage lien. The Citizens Bank in support of its claim relies upon Title 42 O.S. 1951 § 19, which reads as follows:

"One who has a lien, inferior to another upon the same property, has a right:

"1. To redeem the property in the same manner as its owner might, from the superior lien; and,

"2. To be subrogated to all the benefits of the superior lien when necessary for the protection of his interests, upon satisfying the claim secured thereby."

█ The quoted statute does not serve it for the reason that when the Citizens Bank made its loan, upon which it asserts subrogation, it did not have any lien inferior or otherwise against the automobile.

Reliance is made upon our decision in Katter v. Rodgers, 107 Okl. 116, 230 P. 500. The factual situation in the cited case is so opposite to the instant case that the decision is not persuasive here. In the Katter case there were no "intervening" equities, while in the instant case the controversy is between the Citizens Bank and intervening encumbrances. Neither do we think the principle announced by the annotator in 60 C.J., Subrogation, § 115, p. 811, 83 C.J.S., Subrogation, § 39, and here relied upon, is applicable to the present case for the reason that there is absence of proof that the Citizens Bank furnished the means of discharging McDonald's debt to the McAlester Bank secured by the mortgage, with an express or implied agreement or understanding that it was to have the benefit of the security held by the McAlester Bank.

As we have pointed out, some three months after the Citizens Bank consummated its loan to McDonald, upon the advice of its attorney, it attempted to obtain from the McAlester Bank an assignment of the loan held by it. In response to that request the McAlester Bank advised the Citizens Bank that they could not make an assignment for the reason that they had knowledge of intervening liens upon the car. The Citizens Bank having failed to take an assignment of the McAlester Bank's mortgage, as here disclosed, cannot claim the benefit of the principle of subrogation.

In Owen v. Interstate Mortgage Trust Co., 88 Okl. 10, 211 P. 87, 30 A.L.R. 816, we held:

"One who, having no interest to protect, voluntarily loans money to a mortgagor for the purpose of satisfying and canceling a prior mortgage, taking a new mortgage for his own security, cannot have the former mortgage revived and himself subrogated to the rights of the mortgagee thereon where he has failed to take an assignment of the prior mortgage, and has voluntarily paid and discharged the same of record."

█ Our decision in Bourquin v. Feland, 189 Okl. 498, 117 P.2d 789, 791, was specifically based upon a finding that "the whole transaction had all the earmarks of a completed arrangement to substitute liens," a condition we do not find in the record now before us. We have examined the cases relied upon by Citizens Bank and find that they present facts disclosing that the controversy there presented was with the original debtor, or his representative, and do not present a question of subrogation against an intermediate claimant. Citizens Bank did not sustain the burden of proof to support its contention that it was entitled to have the first mortgage revived and reinstated for its benefit. The presumption is that when the note held by the McAlester Bank was surrendered and the mortgage release executed, which instruments were mailed to the Citizens Bank, that the former obligation and lien was discharged. If a contrary agreement or arrangement was made that fact must be established by the creditor seeking affirmative relief. Ambrister v. Dalton, 66 Okl. 158, 168 P. 231. Moreover, the record here discloses that the Citizens Bank was in the position of a volunteer only. It was

not a surety of McDonald, and was under no obligation to make the loan to him.

In Bobier v. Horn, 95 Okl. 8, 222 P. 238, 241, it is stated in the opinion:

"One who pays the debt of another must have acted under compulsion to save himself from loss. It is only when the person pays the debt to protect his own interest, equity will substitute such person to the position of the creditor without an agreement to that effect; otherwise the debt is extinguished; and he who pays it is a volunteer or intermeddler without an interest to protect."

The following cases support the principle announcement in Bobier v. Horn, supra; Kahn v. McConnell, 37 Okl. 219, 131 P. 682, 47 L.R.A.,N.S., 1189; Tynes v. Smith, Sheriff, 105 Okl. 100, 234 P. 637. In the latter case, we held:

"When the vendee in payment of the purchase price of real estate pays indebtedness secured by a first mortgage, and the mortgage is released and discharged of record, he is not subrogated to the lien of that mortgage, as against a judgment creditor whose judgment was duly filed of record in the absence of an assignment of the mortgage, or an agreement that he should be subrogated to the rights of the mortgagee."

Undoubtedly, if the Citizens Bank had had knowledge of the mortgages junior to the McAlester Bank's mortgage, it would have taken an assignment of the McAlester Bank's mortgage; but it was charged with constructive notice thereof as all junior mortgages were a matter of record. Moreover, so far as the record discloses, Citizens Bank failed to use any diligence in ascertaining whether the automobile of McDonald was encumbered with liens other than the McAlester Bank's loan.

The record here discloses that there is impounded with the trial court the sum of $877.60, proceeds of the sale of the car. The judgment below in favor of the Pittsburg Broadcasting Company giving it priority in the fund, subject to expense and costs in repossessing the automobile, is

hereby affirmed. The judgment in all other respects establishing subsequent priorities to the fund in favor of Charles Fassino and the Guaranty Investment Company, is affirmed. The judgment in favor of the Citizens Bank establishing its lien in the fund as a lien inferior to the lien of the Pittsburg County Broadcasting Company, Charles Fassino and the Guaranty Investment Company, is affirmed.

JOHNSON, V. C. J., and WELCH, CORN, DAVISON, WILLIAMS and BLACKBIRD, JJ., concur.